IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| WASHINGTON INTERNATIONAL INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| V. | § § | CASE NO. 3:22-cv-00131 |
| JEREMIAH JONES, | § § | |
| Defendant. | § | |

*Complaint*

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff, Washington International Insurance Company, complains of Defendant, Jeremiah Jones, and respectfully states:

*Parties, Jurisdiction and Venue*

1.      Plaintiff, Washington International Insurance Company ("Surety"), is an insurance company organized and existing under the laws of the State of New Hampshire with its principal place of business located in Kansas City, Missouri.  Surety is authorized to do and is doing business in the State of Texas.

2.      Defendant, Jeremiah Jones ("Principal"), is and was at all relevant times an individual resident and citizen of the State of Texas who may be served with process at his residence located at 10119 Potomac, El Paso, Texas 779924.

3.      The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

4.      Jurisdiction is proper in this judicial district pursuant to 28 U.S.C. §1332(a)(1). Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) and (2) since Principal

resides in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in El Paso County, Texas.

### *Factual Background*

5.      On or about June 9, 2010, Principal executed that certain written Agreement of Indemnity in favor of Surety (the "Agreement").  Under ¶2 of the Agreement, Principal agreed to completely indemnify Surety from and against any and all liability, loss, costs, damages, fees, attorney's fees and other expenses which Surety may sustain or incur by reason of, or in consequence of, the execution of bonds for Principal and any renewal, continuation or successor thereof.  In addition, under ¶5 of the Agreement, Principal agreed, upon demand by Surety, to deposit current funds with Surety in amount sufficient to satisfy any liability, claim asserted, suit or judgment by reason of such suretyship.

6.      Principal executed the Agreement to induce Surety to issue a surety bond on behalf of Principal to enable him to act as a "VA fiduciary" for Vickie M. Cromartie ("Beneficiary") to receive and disburse certain monies to be paid by the United States of America, acting through the Department of Veterans Affairs (the "VA"), for the use and benefit of Beneficiary (the "VA Funds"). Beneficiary is a former member of the U.S. military services who became incapable of managing her affairs, and Principal is Beneficiary's father and court-appointed legal guardian.

7.      Principal was originally appointed by the VA as a VA fiduciary for Beneficiary in March, 2009.  In the Fiduciary Agreement between Principal and the VA dated March 10, 2009 ("Fiduciary Agreement"), Principal agreed, among other things, that he would: (i) use all VA Funds received from the VA for the benefit of Beneficiary, (ii) submit periodic accountings to the VA of all VA Funds he received and used for the benefit of Beneficiary, and (iii) release all assets of Beneficiary under his control, including the VA Funds, upon the termination of his services as a VA

fiduciary over the VA Funds, as directed by the VA.

8.      However, in order for Principal to be able to act as a VA fiduciary over the VA Funds in accordance with the Fiduciary Agreement, federal law required that Principal provide to the VA a suitable bond to guarantee his faithful execution and discharge of his duties as a VA fiduciary over the VA Funds for the benefit of Beneficiary.  Thus, at the request of Principal and induced by and in reliance upon Principal's execution of the Agreement, Principal, as principal, and Surety, as surety, executed and issued to the VA, as obligee, a Bond of Person Designated to Act on Behalf of Incompetent Member or Former Member of the Uniformed Services numbered 9070229, dated June 9, 2010, and in the original penal sum of $155,000, in accordance with the requirements of 37 U.S.C. §602(e) (the "Bond").  Over the years since its execution and issuance, the penal sum of the Bond has fluctuated at the request of the VA through the issuance of various Surety Riders.  The current penal sum of the Bond is $269,000 as a result of a Surety Rider dated July 6, 2016.

9.      On or about August 21, 2020, the VA appointed a successor VA fiduciary – Alma Eckels of El Paso, TX ("Successor VA Fiduciary") – to act as the successor VA fiduciary for Beneficiary in the place of Principal and as the new payee on all VA Funds provided by the VA for the benefit of Beneficiary.  The VA obtained from Successor VA Fiduciary a "Bond of Legal Custodian" issued by Western Surety Company in the penal sum of $351,382.13 to secure Successor VA Fiduciary's obligations to the VA on behalf of Beneficiary (like the Bond issued by Surety on behalf of Principal).  The VA notified Principal of this action by letter dated August 24, 2020 (the "Notice").  In the Notice, the VA required that Principal: (i) submit a final accounting of the VA Funds to the VA, and (ii) forward all remaining VA Funds to Successor VA Fiduciary at the time the final accounting is submitted.  Unfortunately, Principal failed and refused to comply with both of these directives from the VA despite multiple additional attempts, both orally and in writing, to

obtain his compliance over a period of several months by both Successor VA Fiduciary and representatives of the VA.  In May, 2021, the VA issued a determination that Principal, among other things, had misused the VA Funds received on behalf of Beneficiary in the amount of $339,066.59 and failed to provide an accounting for the VA Funds received and disbursed during the period of February 2020 through August 2020.

10.     As a direct result of the VA's determination of misuse against Principal, the VA thereafter presented a claim against Surety under the Bond for the payment of $339,066.59 by letter dated June 3, 2021 (the "Bond Claim").  In response, Surety initiated an investigation of the Bond Claim, which investigation included, among other things, both oral and written communication with Principal and representatives of the VA and obtaining and reviewing documentation regarding the details of the VA's determination of Principal's misuse of the VA Funds.  In that investigation, Principal admitted to Surety's claim representative on several occasions that he had not transferred, and refused to transfer, the VA Funds to Successor VA Fiduciary for the benefit of Beneficiary and he would not provide a final accounting of the VA Funds for the period of February 2020 through August 2020 as demanded by the VA.

11.     As a result of the Bond Claim and as part of its investigation thereof, Surety submitted an initial written demand to Principal on February 28, 2022, to indemnify Surety from the Bond Claim and deposit current funds with Surety in the amount of the Penal Sum of the Bond of $269,000.00 in accordance with the terms of the Agreement no later than March 18, 2022 (the "Initial Demand").  Principal failed and refused to respond to the Initial Demand.

12.     As a result, Surety hired the undersigned outside counsel to assist Surety in its efforts to cause Principal to comply with his obligations owed to the VA and/or to Surety.  On March 28, 2022, counsel for Surety submitted a final written demand to Principal on behalf of Surety

demanding that Principal immediately: (i) provide the VA with a final accounting of all VA Funds received by Principal in the account maintained by Principal for the period from Feb. 27, 2020 to Aug. 21, 2020, (ii) transfer all VA Funds in said account to Successor VA Fiduciary, and (iii) submit proof of his compliance to counsel (the "Final Demand").  Furthermore, the Final Demand also presented to Principal Surety's final written demand for the deposit of collateral with Surety in the amount of $269,000.00 to be used to exonerate, indemnify and hold Surety harmless from and against the Bond Claim presented against Surety by the VA.  The Final Demand required Principal's compliance by April 8, 2022.  Principal failed and refused to respond to the Final Demand.

13.     In addition, as a direct result of the Bond Claim presented against Surety by the VA under the Bond and Principal's failure and refusal to comply with his obligations to the VA and Surety, Surety has incurred and will continue to incur expenses for which Principal agreed to indemnify and hold Surety harmless under the Agreement.

14.     All conditions precedent to Surety's right to recover the relief requested herein from Principal under the Agreement and/or Texas law have occurred or have been performed, excused or waived.

### *Count I – Exoneration*

15.     Surety realleges Paragraphs 1 through 14 above as if set forth in full herein.

16.     Beneficiary is the owner of all VA Funds that Principal has received from the VA for the benefit of Beneficiary.  Under the Fiduciary Agreement, Principal owes both contractual and legal fiduciary obligations to the VA and Beneficiary in his capacity as the initial VA fiduciary over all VA Funds which he received from the VA for the benefit of Beneficiary.  Principal has violated and materially breached said obligations owed to the VA by failing and refusing, upon the VA's directions/demands, to: (i) provide the VA with a final accounting of all VA Funds he received and

maintained for the benefit of Beneficiary during the period from Feb. 27, 2020 to Aug. 21, 2020, and (ii) transfer all VA Funds in his possession to Successor VA Fiduciary.  Principal's liability to the VA for said violations/material breaches has matured – Principal is absolutely obligated to account for all VA Funds <u>and</u> to tender or transfer the remaining VA Funds in his possession (which do not belong to him but rather to Beneficiary) to Successor VA Fiduciary as directed by the VA.

17.     In addition, Principal has materially breached the terms of ¶3 of the Agreement with Surety by failing and refusing to exonerate, indemnify and hold Surety harmless from the Bond Claim upon Surety's demands by performing the underlying obligations owed to the VA and Beneficiary so as to keep Surety, as the secondary obligor, from having to perform under the Bond. Moreover, Principal has materially breached the terms of ¶5 of the Agreement with Surety by failing and refusing to deposit cash collateral with Surety in the amount of $269,000.00 as demanded by Surety to be used by Surety to exonerate, indemnify and hold Surety harmless from and against the Bond Claim presented against Surety by the VA.

18.     Surety, as the secondary obligor to the VA under the Bond, is equitably entitled to temporary and permanent injunctions and/or orders from this Court compelling Principal, as the primary obligor, to perform its primary obligations to the VA under the Fiduciary Agreement and to Surety under the Agreement prior to the time that Surety must pay or perform to the VA, as obligee under the Bond.  In this regard, Surety's secondary obligation to pay or perform to the VA under the Bond has become fixed and absolute, and its obligation under the Bond exists solely because Principal, as the primary obligor, has failed to perform his primary obligations to the VA under the Fiduciary Agreement.  Under these circumstances, a surety has an equitable right of exoneration the objective of which is to compel the primary obligor to discharge, in advance of the surety's payment or performance to the obligee, the principal's primary obligation so as to effectively discharge the

surety's secondary obligation.  This law of equity places the loss where it truly belongs, upon the primary obligor.  Key to this particular situation at least in part is that Principal does not have any ownership interest in the VA Funds – he holds them solely as a VA fiduciary – a trustee – for the use and benefit of Beneficiary.  And he agreed with the VA in the Fiduciary Agreement that he would, among other things, fully account for his use of the VA Funds and transfer said VA Funds to a successor VA fiduciary if directed to do so by the VA.  Moreover, Principal promised Surety in the Agreement that he would deposit cash collateral with Surety upon demand in an amount sufficient to satisfy any liability, claim asserted, suit or judgment by reason of Surety's issuance of the Bond.  The VA has filed the Bond Claim with Surety in an amount in excess of the Penal Sum of the Bond, exposing Surety to significant liability under the Bond.  Thus, Surety sues Principal under the equitable doctrine of exoneration for temporary and permanent injunctions and/or orders compelling Principal to: (i) provide the VA with a final accounting of all VA Funds he received and maintained for the benefit of Beneficiary during the period from Feb. 27, 2020 to Aug. 21, 2020, (ii) transfer all VA Funds in his possession to Successor VA Fiduciary, or in the alternative, deposit all VA Funds into the registry of the Court so that the Court can then direct their distribution in accordance with the rights and obligations of the parties, and/or (iii) deposit cash collateral with Surety in the amount of $269,000.00 as demanded by Surety to be used by Surety to indemnify Surety from and against the Bond Claim presented against Surety by the VA.

### Count II – Bill Quia Timet

19.      Surety realleges Paragraphs 1 through 18 above as if set forth in full herein.

20.      In the event the Court should find that Surety's secondary obligation to pay or perform to the VA under the Bond has not yet become fixed and absolute, Surety submits that it reasonably fears that it will have to pay the VA in the future an amount up to the Penal Sum of the

Bond as a result of the Bond Claim arising directly from Principal's failure and refusal to perform his obligations to the VA under the Fiduciary Agreement. Indeed, Principal's failure and refusal to comply with the directions and demands of the VA, the Successor VA Fiduciary, and Surety raise a legitimate concern and fear that Principal, who is not the owner of the VA Funds, will dissipate said funds and/or divert them to some purpose other than for the benefit of Beneficiary prior to transferring said funds to the Successor VA Fiduciary as directed by the VA. Principal has no right to retain the VA Funds when the provider of said funds – the VA – for the benefit of a third party – the Beneficiary – has directed that they be turned over to the Successor VA Fiduciary.

21. Furthermore, Surety is also entitled to be collateralized by Principal under ¶5 of the Agreement prior to having to make any payment to the VA or otherwise perform under the Bond. This collateral deposit provision is a crucial, bargained for right for which Surety truly has no adequate remedy at law and will likely suffer irreparable injury (at least the loss of this valuable bargained for right) should Principal fail to perform his promise to Surety. Accordingly, Surety sues Principal under the equitable bill *quia timet* for temporary and permanent injunctions and/or orders compelling Principal to: (i) provide the VA with a final accounting of all VA Funds he received and maintained for the benefit of Beneficiary during the period from Feb. 27, 2020 to Aug. 21, 2020, (ii) transfer all VA Funds in his possession to Successor VA Fiduciary, or in the alternative, deposit all VA Funds into the registry of the Court so that the Court can then direct their distribution in accordance with the rights and obligations of the parties, and/or (iii) deposit cash collateral with Surety in the amount of $269,000.00 as demanded by Surety to be used by Surety to indemnify Surety from and against the Bond Claim presented against Surety by the VA.

### Count III – Indemnity/Reimbursement

22. Surety realleges Paragraphs 1 through 21 above as if set forth in full herein.

23.     Under ¶2 of the Agreement, Principal agreed to completely indemnify Surety from and against any and all liability, loss, costs, damages, fees, attorney's fees and other expenses which Surety may sustain or incur by reason of the execution of Bond.  The VA has presented the Bond Claim to Surety demanding payment of $339,066.59 under the Bond due to Principal's failure and refusal to comply with his obligations to the VA under the Fiduciary Agreement.  Surety is exposed to liability, losses and expenses as a result of the Bond Claim.  Principal has materially breached the Agreement by failing and refusing, despite several oral and written demands, to completely indemnify Surety from all losses and expenses arising from the Bond Claim, including all its expenses (including reasonable attorney's fees incurred in pursuit of this lawsuit "as damages," not costs) incurred in pursuit of this lawsuit.  Principal is thus liable to Surety under the Agreement to completely indemnify Surety from and against and reimburse to Surety all losses and expenses Surety incurs and pays under the Bond, both those Surety has incurred and paid as of the date of this Complaint and those it will incur and pay in the future as a result of the Bond Claim, for which Surety now sues.

### Count IV – Specific Performance of Collateral Deposit Provision

24.     Surety realleges Paragraphs 1 through 23 above as if set forth in full herein.

25.     Principal has materially breached the Agreement by failing and refusing to deposit cash collateral with Surety in the amount of $269,000.00 as demanded by Surety in accordance with ¶5 of the Agreement to cover Surety's anticipated loss and expense arising from the Bond Claim. This collateral deposit provision is a crucial, bargained for right for which Surety truly has no adequate remedy at law and will likely suffer irreparable injury should Principal fail to perform his promise to Surety.  Accordingly, Surety sues Principal for specific performance of his promise to deposit cash collateral with Surety upon demand and seeks preliminary and permanent injunctions

from this Court compelling Principal to immediately deposit cash with Surety in the amount of $269,000.00 to be used by Surety per the terms of the Agreement.

### Count V – Attorney's Fees, Interest and Costs

26.     Surety realleges Paragraphs 1 through 25 above as if set forth in full herein.

27.     Surety presented its claims under the Agreement to Principal prior to filing suit, but no amount has been tendered in payment to Surety.  Thus, in addition to its right to recover attorney's fees and expenses "as damages" under the Agreement in connection with this lawsuit, Surety is also entitled to recover reasonable and necessary attorney's fees and costs pursuant to Section 38.001 *et seq.* of the Texas Civil Practice & Remedies Code, for which Surety now sues.

23.     Surety additionally sues Principal for the maximum amount of prejudgment and post-judgment interest to which it is entitled under the Agreement, at law, by statute or in equity, and for court costs.

WHEREFORE, Plaintiff, Washington International Insurance Company, respectfully requests that Defendant, Jeremiah Jones, be cited to appear and answer and, upon trial hereof, prays that judgment be entered against Principal in favor of Surety:

(i)     in Count I – Exoneration, for temporary and permanent injunctions and/or orders compelling Principal to: (a) provide the VA with a final accounting of all VA Funds he received and maintained for the benefit of Beneficiary during the period from Feb. 27, 2020 to Aug. 21, 2020, (b) transfer all VA Funds in his possession to Successor VA Fiduciary, or in the alternative, deposit all VA Funds into the registry of the Court so that the Court can then direct their distribution in accordance with the rights and obligations of the parties, and/or (c) deposit cash collateral with Surety in the amount of $269,000.00 as demanded by Surety to be used by Surety to indemnify Surety from and against the Bond Claim presented against Surety by the VA;

(ii)    in Count II – Bill *Quia Timet*, for temporary and permanent injunctions and/or orders compelling Principal to: (a) provide the VA with a final accounting of all VA Funds he received and maintained for the benefit of Beneficiary during the period from Feb. 27, 2020 to Aug. 21, 2020, (b) transfer all VA Funds in his possession to Successor VA Fiduciary, or in the alternative, deposit all VA Funds into the registry of the Court so that the Court can then direct their distribution in accordance with the rights

and obligations of the parties, and/or (c) deposit cash collateral with Surety in the amount of $269,000.00 as demanded by Surety to be used by Surety to indemnify Surety from and against the Bond Claim presented against Surety by the VA;

(iii)    in <u>County III – Indemnity/Reimbursement</u>, for all losses and expenses (including reasonable attorney's fees incurred in pursuit of this lawsuit as damages, not costs) Surety incurs and pays under the Bond, both those Surety has incurred and paid as of the date of this Complaint and those it will incur and pay in the future as a result of the Bond Claim and this lawsuit;

(iv)    in <u>Count IV – Specific Performance of Collateral Deposit Provision</u>, for an order of specific performance of the collateral deposit provision compelling Principal to deposit with Surety cash collateral in the amount of $269,000.00 and for preliminary and permanent injunctions regarding same;

(v)     in <u>Count V – Attorney's Fees, Interest and Costs</u>, for reasonable attorney's fees, prejudgment interest, court costs and post-judgment interest; and

(vi)    for such other and further relief to which Surety may be justly entitled.

Respectfully submitted,

*/s/ Robert M. Fitzgerald*
Robert M. Fitzgerald
State Bar No. 07088900
Law Offices of Robert M. Fitzgerald, PC
1219 FM 314
Van, Texas 75790
(903) 963-7550
(903) 963-7551 (Fax)
Email: rfitzgerald@rmflaw.net
*Attorneys    for    Plaintiff,    Washington*
*International Insurance Company*